IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 1:04CV00907 (RBW) |
| v. ) | |
| ) | |
| U.S. DEPARTMENT OF ) | |
| HOMELAND SECURITY ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**PLAINTIFF'S VERIFIED MOTION FOR AWARD OF ATTORNEYS'
FEES AND LITIGATION EXPENSES**

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel and pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 1920, respectfully requests that it be awarded $64,737.00 in attorney's fees and litigation expenses in the above-captioned action. The motion is supported by a verified itemization of attorney/paralegal time and expenses, which is attached hereto as Exhibit 1. As grounds therefor, Judicial Watch states as follows:

**MEMORANDUM OF LAW**

**I.  Factual Background.**

This case involves Plaintiff's efforts to obtain information about the "Temporary Guest Worker" program, a government program put into effect by former President George W. Bush in early 2004. In furtherance of its investigation, on February 27, 2004, Plaintiff sent Defendant a FOIA request seeking access to any and all records concerning or relating to the survey conducted by U.S. Border Patrol agents to discover if a January 7, 2004 speech by then President Bush announcing the program had any effect on the decision of illegal aliens to cross the U.S. – Mexican border. *See* Complaint at ¶5. Judicial Watch also sought a waiver of both search and duplication

1

fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), 5 U.S.C. § 552(a)(4)(A)(iii), and 32 C.F.R. § 518.84(a)-(e). *Id.*

Defendant was required to respond to Judicial Watch's February 27, 2004 FOIA request by March 29, 2004. *Id.* at ¶7. However, prior to the filing of this lawsuit, the only response Plaintiff received from Defendant was an acknowledgement letter, on or about March 2, 2004, and a letter dated May 13, 2004 stating that Plaintiff's request was being processed and that it was "currently number 647 on the list of 760 pending cases to be worked." *Id.* at ¶¶6, 9.

On June 3, 2004 Plaintiff filed the instant lawsuit. However, approximately *eleven* additional months passed before Plaintiff received any responsive records from Defendant. *See* Plaintiff's Second Renewed Cross-Motion for Partial Summary Judgment and Opposition to Defendant's Motion for Summary Judgment, Docket No. 45 ("Pl. 2nd Ren. Mot.") at 2-3. Defendant finally produced approximately 965 pages of records to Plaintiff on May 6, 2005. *Id.* at 2. An examination of these records quickly revealed that Defendant's search for records was obviously flawed. *Id.* Nor were these flaws remedied by Defendant's second production, which occurred on August 26, 2005. *Id.* at 3.

In response to Defendant's obviously flawed search, Plaintiff moved for partial summary judgment on November 1, 2005. *Id.* Defendant apparently recognized that its initial search for records had been flawed because, in February 2006, Defendant requested, and the Court granted, a 90 day stay of this action so that Defendant could conduct a second search. *See* February 9, 2006 Order. The Court subsequently issued a Minute Order dated May 22, 2006, ordering Defendant to turn over any records located as a result of the second search by May 24, 2006. The Court's May 22, 2006 Order resulted in approximately 125 additional pages of records being produced to Plaintiff. Pl. 2nd Ren. Mot. at 4.

After a second round of summary judgment briefing, the Court declined to enter a judgment in Defendant's favor, finding that:

> [b]y presuming the adequacy of the first search while defending the adequacy of the second, the Defendant makes it unnecessarily difficult for the Court to assess whether it had fulfilled its duties under the FOIA <u>as a whole</u> in responding to the Plaintiff's request for responsive records.

*See* Order of August 10, 2012 at 9-10 (emphasis in original).

The parties subsequently ordered to submit a third round of summary judgment briefing to determine the adequacy of Defendant's overall search for responsive documents. Pl. 2nd Ren. Mot. at 4-5. In April 2012, the Court ruled that Defendant *still* had not adequately fulfilled it search obligations, and ordered Defendant to conduct yet another search. *See* Memorandum Opinion and Order of April 30, 2012 at 11-14, 22. The Court also ordered Defendant to produce any remaining records responsive to the request that had not yet been produced. *Id.* at 22. As a result of this Order, Defendant produced additional records to Plaintiff on May 23 and May 30, 2012. *See* Defendant's Notice of Filing Declarations, Docket No. 62.

**II.      Argument.**

      **A.      Judicial Watch is Entitled to an Award of Attorney's Fees.**

FOIA allows awards of attorney's fees to prevailing plaintiffs for two purposes: (1) "to encourage Freedom of Information Act suits that benefit the public interest" and (2) to serve "as compensation for enduring an agency's unreasonable obduracy in refusing to comply with the Freedom of Information Act's requirements." *LaSalle Extension Univ. v. Federal Trade Comm'n*, 627 F.2d 481, 484 (D.C. Cir. 1980). To obtain an award, the requestor must demonstrate that (1) it has "substantially prevailed" and is thus eligible for an award; and (2) it is entitled to an award under a balancing of relevant factors. *See Oil, Chemical and Atomic Workers*

3

*Int'l Union v. Department of Energy*, 288 F.3d 452 (D.C. Cir. 2002); *Bricker v. FBI*, 54 F. Supp. 2d 1, 5 (D.D.C. 1999); *Northwest Coalition for Alternatives to Pesticides v. Browner*, 965 F. Supp. 59, 63 (D.D.C. 1997) (citing *Weisberg v. DOJ*, 848 F.2d 1265, 1268 (D.C. Cir. 1988)).

### 1. Judicial Watch Has "Substantially Prevailed".

Pursuant to recent amendments to FOIA contained in the Open Government Act of 2007, a FOIA Plaintiff has substantially prevailed if it has "obtained relief through ... a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(II). *See also, Summers v. Department of Justice*, 569 F.3d 500, 503 (D.C. Cir 2009). In other words, "a plaintiff is deemed to have substantially prevailed for purposes of § 552(a)(4)(E) if the litigation substantially caused the requested records to be released." *ACLU v. United States Department of Homeland Security*, No. 08-1100, 2011 U.S. Dist. LEXIS 104264, at *16 (D.D.C. Sep. 15, 2011) (Walton, J.) (*appeal docketed*, D.C. Cir. No. 11-5318) (*quoting N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau*, 563 F. Supp. 2d 217, 221 (D.D.C. 2008)). Similarly, this Court held that "FOIA litigation 'substantially causes' the release of records if those records were identified as a result of the litigation." *ACLU*, 2011 U.S. Dist. LEXIS 104264 at *18. In addition, this Court has specifically adopted the reasoning of the D.C. Circuit: "It would . . . appear quite likely that in the absence of this litigation and the need it imposed to specifically justify each deletion [the defendant] would not have voluntarily undertaken to review those files." *Fund for Constitutional Government v. National Archives & Records Services*, 656 F.2d 856, 872 (D.C. Cir. 1981).

In the instant case, Plaintiff clearly satisfies this standard. Plaintiff did not receive a substantive response to its February 27, 2004 FOIA request for nearly 15 months. It was only

4

after Plaintiff filed this lawsuit June of 2004 and after 11 additional months had passed that Plaintiff began to receive some responsive records from Defendant. Pl. 2nd Ren. Mot. at 2-3. The filing of this lawsuit is the only reasonable explanation for the change, however slow, in Defendant's behavior. It is also clear that Plaintiff's claim was substantial. Plaintiff was obviously entitled to the documents it requested pursuant to 5 U.S.C. § 552(a)(2), yet it received *nothing* substantive from Defendant within the statutorily prescribed time period or for months thereafter. Plaintiff respectfully submits that there can be no question that it has substantially prevailed in this litigation under new standard set by the Open Government Act of 2007.

Because this case was filed nearly 3 years before the Open Government Act of 2007 became effective, Judicial Watch expects that Defendant will argue that Judicial Watch's eligibility for attorneys' fees should be governed by the older standard set forth in *Oil, Chemical and Atomic Workers Int'l Union v. Department of Energy* ("*OCAW*"). In that case, the D.C. Circuit held that "in order for Plaintiffs in FOIA actions to become eligible for an award of attorney's fees, they must have 'been awarded some relief by a court' either in a judgment on the merits or in a court-ordered consent decree." *OCAW*, 288 F.3d at 456-57. However, even under this older and more stringent standard, it is still obvious that Judicial Watch substantially prevailed.

First, as stated above, the Court's May 22, 2006 Minute Order ordered Defendant to produce, by May 24, 2006, any documents that Defendant had discovered as a result of its second search for responsive records. This order led directly to the production of approximately 125 additional pages of records to Plaintiff. The May 22, 2006 Order alone therefore confirms Plaintiff's eligibility for an attorney fee award in this case.

In addition, the on April 30, 2012 the ordered Defendant to conduct an additional search and to turn over any additional records located as a result of that search, as well as produce any additional records responsive to Plaintiff's February 27, 2012 FOIA request that had not yet been produced. *See* April 30, 2012 Memorandum Opinion and Order at 22. This Order led directly to Defendant's production of three additional pages of records describing the number of illegal immigrants apprehended in the San Diego area from January 7, 2004 to February 27, 2004. *See* Defendant's May 30, 2012 Notice of Filing Declarations, Docket No. 62.

Given all the circumstances, it is clear that Judicial Watch has substantially prevailed in this case, whether it is governed under the Open Government Act of 2007, or the older standard set by the D.C. Circuit in *OCAW*.

### 2. **Balancing the Relevant Factors Warrants an Award.**

In addition, before granting an award of attorney's fees and litigation expenses to a requestor who has "substantially prevailed," a Court also must consider the following four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information." *Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998) (internal citations and quotations omitted). The second and third factors are "closely related and often considered together." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (quoting *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992)). In determining a requestor's entitlement to an award of attorney's fees, the Court must balance all four factors. *Ralph Hoar & Assocs. v. Nat'l Hwy Traffic Safety Admin.*, 985 F. Supp. 1, 9 (D.D.C. 1997). The balancing of these factors in this case clearly supports awarding attorney's fees to Judicial Watch.

### a. **Public Benefit.**

According to the D.C. Circuit, a FOIA action results in a public benefit if a plaintiff's victory is "likely to add to the fund of information that citizens may use in making vital political choices." *Cotton*, 63 F.3d at 1120 (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978)). In making this inquiry, it is important to note that the "central purpose" of FOIA is "to assist our citizenry in making the informed choices so vital to the maintenance of a popular form of government." *Blue*, 570 F.2d at 533.

This case ultimately concerns illegal immigration, which is as controversial an issue in the United States today as it was in 2004. Any action or statement by the government that intentionally or otherwise encourages individuals from outside the United States to come here in violation of U.S. immigration law is of great interest to the public. As a result of this litigation, Plaintiff ultimately obtained information that confirming that former President Bush's proposed "Temporary Guest Worker" program did indeed result in, at least temporarily, an increased amount of illegal immigration than U.S. Border Patrol Agents had seen previously.

For example, Defendant's May 6, 2005 document production included numerous surveys completed by illegal aliens showing that rumors of amnesty had indeed influenced their decision to attempt to enter the United States illegally. In some of these cases, the individual specifically stated that he or she had not attempted to enter the United States prior to the announcement of the guest worker program. A small sample of these completed surveys is attached as Exhibit 2.

Plaintiff subsequently conducted a more thorough review of Defendant's May 2005 production and on June 28, 2005 released a report entitled U.S. Border Patrol Survey Analysis – Detailing the U.S. Government's Polling of Apprehended Illegal Immigrants on the Southern Border in January 2004. A copy of this report, which concluded that 45% of the aliens surveyed

had crossed illegally based on rumors of amnesty, is attached as Exhibit 3. This report was disseminated to the public and resulted in numerous media reports about the records uncovered by Plaintiff. A sample of these media reports is attached as Exhibit 4.

By pursuing this case and forcing the release of numerous documents, Plaintiff has therefore provided a substantial benefit to the public.

### b. Commercial Benefit/Nature of Plaintiff's Interest.

The second and third factors -- whether a plaintiff will derive commercial benefit from disclosure and the nature of the plaintiff's interests in the records -- are closely related and typically considered together. *Cotton*, 63 F.3d at 1120. Judicial Watch is a not-for-profit, tax-exempt, educational organization. It has no commercial interest in this case. Rather, Judicial Watch's only interest in this matter is in obtaining and disseminating information of interest to the public, which, significantly, is identical to the purpose behind FOIA. S. Rep. No. 93-854, 93 Cong., 2d Sess. at 19 (1974). Accordingly, Judicial Watch's entirely non-commercial motive and its interest in obtaining and disseminating the records at issue here clearly entitle it to an award of attorney's fees and expenses.

### c. Reasonableness of Government's Basis for Withholding.

With respect to the final factor, a government agency only needs to have a "colorable basis in law" to withhold material. *Chesapeake Bay Foundation v. Department of Agriculture*, 11 F.3d 211, 216 (D.C. Cir. 1993). In the instant matter, regardless of whether Defendant may have had a reasonable basis in law for withholding the material, this factor alone does not outweigh public benefit and commercial benefit to the plaintiff factors. *Tax Analysts v. IRS*, No. 94-923, 1996 U.S. Dist. LEXIS 22115, *3 (D.D.C. June 3, 1996); *see also ACLU*, 2011 U.S. Dist. LEXIS

8

104264, at *25-26 ("[T]he reasonable basis in law factor is not dispositive, and can be outweighed by the public benefit and commercial benefit to the plaintiff factors.").

Defendant's conduct clearly justifies a fee award. First, as stated above Defendant completely failed to comply with FOIA's statutorily-mandated deadlines. Plaintiff did not receive a substantive response to its February 27, 2004 FOIA request for approximately 15 months, and only after it had filed the instant lawsuit. In addition, Defendant's search for responsive records was clearly flawed. Defendant had to undertake numerous additional searches before completing its record production, at least one of which was specifically ordered by the Court on April 30, 2012. Defendant's failure to conduct a proper search for records in the first instance resulted in a substantial delay in Defendant finally fulfilling its statutory duties to Plaintiff under the FOIA.

Under the circumstances, an award of attorney's fees and expenses to Judicial Watch is amply justified.

### 3. **The Requested Award is Reasonable.**

Fee awards are calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate, resulting in a lodestar amount. *See Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980). As public interest lawyers, Plaintiff's attorneys do not have customary billing rates, as most private practice attorneys do. Nevertheless, public interest attorneys may be awarded reasonable attorney's fees calculated "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 896 (1984) (fees awarded based on prevailing rate whether plaintiff is represented by private or nonprofit counsel); *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995); *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988).

It is well established that awards of attorney's fees may be calculated based on the *Laffey* Matrix, because, in the absence of a specific sub-market analysis of attorney's fees, "use of the broad *Laffey* Matrix may be by default the most accurate evidence of a reasonable hourly rate." *Covington*, 57 F.3d at 1114 n.5.[1] A copy of the *Laffey* Matrix is attached as Exhibit 5. Plaintiff requests that its fee award be calculated under the *Laffey* Matrix.

A verified itemization of attorney/paralegal time expended by Plaintiff in this matter is attached as Exhibit 1. Unless otherwise indicated, the itemization was generated from the contemporaneously-kept time records of the Judicial Watch attorneys and/or paralegals who worked on the case: Paul J. Orfanedes, Jason B. Aldrich, Meredith DiLiberto, and David F. Rothstein. The rates applied to the time recorded in Exhibit 1 are adopted from the *Laffey* Matrix.

Mr. Orfanedes is an attorney who graduated from The American University's Washington College of Law in 1990. He has been practicing law continuously since that time and is an experienced litigator and has been admitted to practice before numerous state and federal courts, including the Bar of this Court.

Mr. Aldrich is an attorney who graduated from William & Mary Marshall-Wythe School of Law in 1997. He has been practicing law continuously since August 2001 and is admitted to the New York Bar as well as to the Bar of this Court.

Ms. DiLiberto is an attorney who graduated from Regent University School of Law in

---

[1] This matrix, commonly referred to as the "*Laffey* Matrix" or the "United States Attorney's Office Matrix," is based on hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983). Use of an updated *Laffey* Matrix was implicitly endorsed by the U.S. Court of Appeals for the District of Columbia Circuit in *Save Our Cumberland Mountains*, 57 F.2d at 1525. The Court subsequently declared that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14 (D.C. Cir. 1995).

2000. She was practicing law continuously at that time and is admitted to the Bar of this Court, although she currently is no longer employed by Judicial Watch.

Mr. Rothstein is a senior litigation assistant/paralegal who graduated from The Catholic University of America's Columbus School of Law in 1994. He has been working as a paralegal at Judicial Watch since 2003.

### B. Plaintiff is Entitled to Reimbursement for Its Litigation Expenses.

Plaintiff has incurred litigation expenses (other than fees of counsel) of $150.00. This consists of the $150.00 filing fee to initiate this action. *See* Exhibit 1. As provided under FOIA and 28 U.S.C. § 1920, these expenses should be reimbursed to Plaintiff.

### III. Conclusion.

For the foregoing reasons, Plaintiff respectfully requests that it be awarded $64,587.00 in attorney's fees and $150.00 in litigation expenses pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 1920, for a total award of $64,737.00.

        Respectfully submitted,
        JUDICIAL WATCH, INC.

        /s/ Paul J. Orfanedes
        D.C. Bar No. 429716

        /s/ Jason B. Aldrich
        D.C. Bar No. 495488
        Suite 800
        425 Third Street, S.W.
        Washington, DC 20024
        (202) 646-5172

        Attorneys for Plaintiff

## VERIFICATION

I hereby verify under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief. Executed on September 14, 2012 in Washington, D.C.

/s/ Jason B. Aldrich

## LOCAL RULE 7.1(M) CERTIFICATE

On September 12, 2012, I contacted Defendant's counsel, Benton Peterson, via e-mail to inform him that Plaintiff intended to file a motion for attorney's fees in this matter and inquire as to whether his client would oppose the motion, or whether his client was willing to enter into negotiations with Plaintiff regarding a possible fee award. On September 13, 2012, I attempted to contact Mr. Peterson again, by telephone, to inquire about Defendant's position on Plaintiff's requests. Mr. Peterson responded in the afternoon of September 13 by e-mail, stating that he was still attempting to ascertain his client's position on Plaintiff's motion. On September 14, 2012, I spoke with Mr. Peterson by telephone and he informed me that Defendant would oppose Plaintiff's motion at this time.

/s/ Jason B. Aldrich